# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

In the Matter of the Search of )
)
One (1) Black LG Cellphone Model LM-K500MM, IMEI# ) Case No.   4:21 MJ 1195 JMB
354544114852782, currently located at 1222 Spruce Street, Room )
7.300, St. Louis, Missouri 63103, further described in Attachment ) SIGNED AND SUBMITTED TO THE COURT FOR
A. ) FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I,  Special Agent Jason Lukowski, ATF  , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the   EASTERN   District of   MISSOURI  , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

*Applicant's signature*

Special Agent Jason Lukowski, ATF
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date:  05/06/2021

*Judge's signature*

City and state: St. Louis, MO     Honorable John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*

AUSA:  C. Ryan Finlen, #6305918IL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> One (1) Black LG Cellphone Model LM- ) <br> K500MM, IMEI# 354544114852782, currently ) <br> located at 1222 Spruce Street, Room 7.300, St. ) <br> Louis, Missouri 63103, further described in ) <br> Attachment A. ) | No. 4:21 MJ 1195 JMB <br><br> FILED UNDER SEAL <br> SIGNED AND SUBMITTED TO THE COURT FOR <br> FILING BY RELIABLE ELECTRONIC MEANS |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Jason Lukowski, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since September 2018, currently assigned to the Kansas City Field Division, St. Louis Group IV Field Office. I am tasked with investigating violations of the federal arson, explosives, controlled substances, violent crime and firearms laws, among others. I have successfully completed the Criminal Investigator Training Program (CITP) and the ATF National Academy Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center. Prior to ATF, I was employed as a State Trooper for the Missouri State Highway Patrol for approximately six years. I have written affidavits for search warrants and complaints that have yielded evidence of state and

federal criminal violations. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a felon) ("the subject offense") have been committed by Devaris Carpenter, a/k/a Devaris Brown. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## LOCATION AND IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a Black LG Cellphone Model LM-K500MM, IMEI# 354544114852782 hereinafter the "Device." The Device is currently held in ATF custody in evidence storage located at 1222 Spruce Street, Room 7.300, in St. Louis, Missouri 63103.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

    traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media.

3

      Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a

   keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

  f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player,

GPS navigation device, Internet, IP Address and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

9. In early 2021, St. Louis Metropolitan Police Department ("SLMPD") Homicide Detectives developed information that identified Devaris Carpenter (DOB XX/XX/1988), a previously convicted felon, as the suspect in the May 29, 2019, homicide of T.L. (who was found dead of gunshot wounds) in the Walnut Park East neighborhood in North St. Louis City, Missouri. Specifically, a witness identified Carpenter as arguing with T.L. moments before he shot her.

10. ATF and SLMPD are currently involved in an investigation into violations of federal firearms laws being committed by Carpenter.

11. On May 29, 2019, eyewitnesses observed Carpenter arguing with T.L. moments before the eyewitness heard multiple gunshots coming from the area where Carpenter and T.L. stood. After police responded to the area, they found T.L. dead from gunshot wounds.

12. As of April 2021, a review of Carpenter's criminal history revealed convictions for the following offenses:

   a. 2006: Robbery for which Carpenter was sentenced to 3 years imprisonment. The execution of that sentence was suspended and a term of probation was granted.

   b. 2011: Possession of a Firearm by a Serious Violent Felon for which Carpenter (who used the last name "Brown" at the time) was sentenced to 12 years imprisonment in Marion, Indiana. Ten years of that sentence were executed and

       two years were suspended. In May 2019, Carpenter had since been released from the Indiana Department of Corrections.

    c.  2020: Possession of a Controlled Substance in St. Clair County, Illinois for which Carpenter was sentenced to 3 years imprisonment. On February 5, 2021, the Illinois Department of Corrections released Carpenter on parole which was scheduled to be completed in February 2022.

Each of these convictions are felony offenses and punishable by a term of imprisonment exceeding one year. As of April 22, 2021, Carpenter was on parole through the State of Illinois. As a result of these circumstances, I have no reason to doubt that Carpenter knew he was a felon at all times relevant to the facts set out in this affidavit.

    13.    On or about March 29, 2021, an SLMPD Homicide detective, acting in an undercover capacity, began communicating with Carpenter through Facebook Messenger via a fictitious Facebook account in an attempt to obtain information about the Carpenter's possession of firearms and the homicide.

    14.    On or about April 8, 2021, while discussing a firearm Carpenter possessed, he told the detective, "Yes baby i got a 380". He later stated, "I don't got it cause something happen i had to put it up baby this way i didn't send a picture baby". Carpenter continued, "You must understand my text I told you something dad to get rid of it for a while that's why I didn't see no picture of it cuz I'm bad happened I had to get rid of it for a while. I had to take care of somebody that's why I don't got it". It should be noted that the firearm used in the May 2019 homicide was consistent with a .380 revolver.

    15.    On April 20, 2021, Carpenter solicited the undercover detective through Facebook Messenger about purchasing a firearm, claiming that he needed a firearm. Based upon

Carpenter's request, the undercover detective contacted ATF and requested ATF's assistance. The undercover detective then provided Carpenter with an undercover ATF agent's (UCA) phone number and told him if he wanted a firearm to contact the number because the UCA had a Glock pistol for sale.

16. On April 21, 2021, at approximately 12:54 a.m., Carpenter called the UCA from phone number (314) 939-2346. Carpenter inquired about the firearm the UCA had for sale. The UCA told Carpenter the firearm was "hot" [street vernacular for a stolen item] and Carpenter replied, "I don't… as long it works." The UCA and Carpenter agreed to meet around noon that same day (April 21, 2021).

17. After the phone call concluded, the UCA sent Carpenter a text message, stating "Its a 40 gloc. U wan it??  Need 3 on it". This truncated message was intended to communicate that the aforementioned firearm was a .40 caliber Glock and inquired as to whether Carpenter was still interested in purchasing it for $300.00. Carpenter sent a return text message at 8:53 a.m. stating, "Yes i want it ok bro am fr [for real] i want it bad cause i don't got one".

18. Over a series of phone calls and text messages, Carpenter agreed to meet the UCA at the Super 8 Hotel located at 6200 North Broadway Street in St. Louis, Missouri, which is located in the Eastern District of Missouri, to purchase the Glock pistol for $300.00 in United States Currency.

19. At approximately 2:12 p.m., Carpenter arrived at the Super 8 Hotel and contacted the UCA at an undercover vehicle. The ATF UCA presented Carpenter with an ATF prop[1]

---

[1] The ATF "prop" firearm was a functional, Glock, Model 17, 9 millimeter pistol bearing serial number FS887US. The term "prop" is merely used by the ATF to designate functional firearms available to the ATF that are not serviced or maintained for use or live firing.

8

firearm for sale, a Glock, Model 17, 9 millimeter pistol bearing serial number FS887US and a seventeen round Glock magazine. Carpenter agreed to purchase the firearm and counted out $300.00 in miscellaneous United States Currency ("USC"). Carpenter provided the UCA with the $300.00 in USC and the UCA provided Carpenter with the ATF prop Glock pistol to complete the transaction. After Carpenter took possession of the firearm he requested bullets for the firearm and asked the UCA if he/she was sure the firearm would function as intended. The UCA assured Carpenter that the firearm was real and would fire a projectile.

20. As soon as the transaction was completed, ATF agents moved in to arrest Carpenter for unlawful possession of a firearm by a felon. The Glock pistol purchased by Carpenter was recovered from the UC vehicle's passenger seat where he was sitting at the time ATF agents moved in to arrest Carpenter. After Carpenter's arrest, the Device was located in Carpenter's possession and identified by him as his cellular phone. Carpenter also provided the passcode "1988" to SLMPD Homicide Detectives to obtain his Parole Officer's contact number. Carpenter was subsequently arrested and charged by complaint with unlawful possession of a firearm by a felon in the United States District Court for the Eastern District of Missouri, case number 4:21-MJ-07148-SPM. A grand jury in the Eastern District of Missouri subsequently indicted Carpenter on these charges in case number 4:21-CR-00274-RWS-DDN. As a result of these circumstances, there is probable cause to believe that Carpenter committed the subject offense.

21. There is also probable cause to believe that the Device was either used to facilitate the subject offense or contains evidence of the subject offense. Carpenter appears to have called the UCA to facilitate his possession of a firearm, *i.e.,* to arrange the purchase of firearms from the UCA. Additionally, Carpenter contacted both the UCA and the Homicide detective about his

possession of firearms through the Facebook Messenger App. In my training and experience, those accessing social media websites, such as Facebook (and specifically the Facebook Messenger App) frequently use their phones to do so. Furthermore, in my training and experience, those engaged in the unlawful possession of firearms often use their phones to take pictures of their firearms and/or communicate with others regarding those firearms.

22. The Device is currently in the lawful possession of the ATF. It came into the ATF's possession after it was located during a search incident to arrest of Carpenter. I seek this warrant to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

23. The Device is currently in storage at 1222 Spruce Street, Room 7.300, St. Louis, Missouri 63103. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent

with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

**[THIS PORTION INTENTIONALLY LEFT BLANK]**

29. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet and disseminate them to other online criminals as they deem appropriate. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

I state under the penalty of perjury that the foregoing is true and correct

_____
Jason Lukowski
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED and SWORN to by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 4.1 and 41, this __6th__ day of May, 2021.

_____
HON. JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

13

## **ATTACHMENT A**

The property to be searched is a Black LG Cellphone Model LM-K500MM, IMEI# 354544114852782 hereinafter the "Device." The Device is currently located at 1222 Spruce Street, Room 7.300, in St. Louis, Missouri 63103.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

Case: 4:21-mj-01195-JMB   Doc. #:  1   Filed: 05/06/21   Page: 16 of 16 PageID #: 16

## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of Title 18 United States Code 922(g)(1)- Possession of a Firearm by a Felon and involve Devaris Carpenter since May 29, 2019, including:

    a. lists of firearm(s) sellers solicited and related identifying information;
    b. communication about firearm(s) or ammunition;
    c. types, amounts, and prices of firearm(s) as well as dates, places, and amounts of specific transactions;
    d. any information related to sources of firearm(s) (including names, addresses, phone numbers, or any other identifying information);
    e. any information recording Carpenter's schedule or travel from May 29, 2019 to the present;
    f. any photographs of firearms or ammunition or documentation of possession;
    g. all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.